SWARTZ *v.* STATE OF INDIANA.

[No. 30,608. Filed February 14, 1966.]

*Bloom and Bloom,* of Fort Wayne, for appellant.

*John J. Dillon,* Attorney General, and *James Manahan,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant was charged with an act of kidnapping on the 2nd day of March, 1963. On January 21, 1964, following a trial before the judge of the court, the appellant was found guilty of that offense under Burns' Ind. Stat. Anno. § 10-2901 (1956 Repl.).

It is first urged that the court erred in overruling appellant's motion in arrest of judgment, based on the ground that the charge does not state facts sufficient to constitute an offense and that the amended affidavit was defective in that it was not resworn to. The transcript contains an affidavit of the clerk of the court stating the amended affidavit has been lost from the files in the case. The motion in arrest of judgment is not sworn to and therefore has no probative value in contradicting the record of the court. The record of the court shows the following:

168

"Comes now the State of Indiana and files amended *affidavit* for Kidnapping, which is in the following words and figures, to-wit:" (Our italics)

The court record shows that an "amended affidavit" was filed. This record is sufficient to dispose of the unsworn motion in arrest of judgment that the amended affidavit was not sworn to. We find no error in the court's overruling of the motion in arrest of judgment.

It is next urged that it was error to permit the prosecuting attorney to cross-examine the appellant and thereby draw from the appellant an admission with reference to a prior conviction. The record shows that the appellant had attested to the fact of his past convictions on direct examination and that he had stated he had been convicted for practically nothing. This opened up the question for cross-examination, both on the issue of the impeachment of the appellant and his credibility. We find no error in the court's ruling of which complaint is made.

It is further contended that it was error to refuse to allow appellant's witness, James Rossi, to testify concerning a conversation which it is claimed he overheard concerning marriage talk between the appellant and the prosecutrix. The State points out that no question is presented to this Court for review on that point, since the appellant did not point out to the Court the object of such questioning after objections were made thereto and did not make an offer to prove to the trial court what the witness would testify to specifically. It is now stated that such testimony would have impeached the testimony of the prosecuting witness who stated she had not at any time "considered" marrying the appellant. The prosecutrix had never been asked whether or not she had had a conversation regarding marriage at the time and place designated, and therefore there could not be a specific impeachment of her by the questions propounded to the witness. Aside from the answer to the question having no specific significance, as we pointed out above, it was

proper for the court to sustain an objection thereto when there was no offer to prove made to the court. *Hinshaw* v. *State* (1897), 147 Ind. 334, 47 N. E. 157; *Noe* v. *State* (1883), 92 Ind. 92.

A large portion of the argument which the appellant presents in this case is on the proposition that the evidence herein was insufficient to justify the conviction. It is admitted in argument that a prima facie case was made to sustain the conviction. It is not urged that there was a failure of proof, but rather that the evidence came almost entirely from the prosecutrix, and therefore does not have sufficient probative value to be accepted by the court to sustain the conviction. As we have said many times before, it is not for this Court on appeal to say who is telling the truth in the trial court below. We can only look at the evidence most favorable to the State where there has been a conviction. We may not weigh the evidence. *Metz* v. *State* (1963), 244 Ind. 536, 194 N. E. 2d 617; *Myers* v. *State* (1960), 240 Ind. 641, 168 N. E. 2d 220; *Denson* v. *State* (1960), 240 Ind. 324, 163 N. E. 2d 749.

Briefly, the evidence shows that the prosecutrix, Mrs. Sarah Brockmeyer, was a divorced office secretary in her late thirties, who lived alone on the first floor of a two story apartment building in Fort Wayne, Indiana. The appellant was forty years of age, three times divorced, a two-time convicted sex offender, who was employed as a traveling salesman and lived with his parents near Fort Wayne. The parties became acquainted in 1962 when Mrs. Brockmeyer sold her house to the parents of the appellant. They began seeing each other frequently, as much as two or three times a week, for a period of about six months, or until January, 1963, when they terminated or attempted to terminate their relationship by mutual consent. The appellant urged Mrs. Brockmeyer to renew their relationship, and she reluctantly agreed. At the end of February the appellant took Mrs. Brockmeyer to her apartment and forced his attentions upon her. At one

time he placed his hands on her throat and threatened to kill both her and himself also. Over her objections, he stayed with her during the night. Mrs. Brockmeyer had an arrangement with a girl friend to call her each morning in arranging to go to work. The call was made by the girl friend and she requested Mrs. Brockmeyer to drive her to work. The appellant agreed and went along, sitting in the back seat of the automobile. After the girl friend was taken to the place of employment, Mrs. Brockmeyer testified the appellant forced her to drive them to Columbia City for the purpose of obtaining a marriage license. Then they went together to the Lutheran Hospital for blood tests. When the prosecutrix was alone with a nurse for that purpose, she asked that the test be delayed and told her she was being forced into the marriage and that she knew of no way she could avoid it without endangering her life. The nurse advised the prosecutrix to contact the police.

Thereafter, the appellant drove Mrs. Brockmeyer back to her apartment where he stayed for the rest of the day. In the evening she informed appellant that she had agreed to go to a party, and he permitted her to leave. As soon as Mrs. Brockmeyer left her apartment, she proceeded to the police. Fearing that she would be treated as an hysterical woman, she first contacted her former husband and had him inform the police of her predicament. The police officers went with her to her apartment, where they found the appellant still there. After questioning the appellant, the police sent him on his way with a warning. Thereupon the prosecutrix picked up her clothing and moved temporarily out of her apartment, staying with a girl friend, Helen Pyles. Mrs. Brockmeyer at the same time consulted an attorney, Barrie Tremper, who wrote the appellant a letter, advising him that he should cease his attentions upon Mrs. Brockmeyer and stay away from her apartment.

A few days later, Mrs. Brockmeyer decided to go back to her apartment in the evening and arranged for her girl friend

to telephone her about 6:00 and 10:00 o'clock in the evening and at 7:00 in the morning to see if she was all right. When she got to her apartment she asked the maintenance man to install a chain lock on her back door. At her request, the maintenance man stayed with her in the evening until about 10:30. At about 1:45 a.m. that night (March 2, 1963) the prosecutrix was awakened from her sleep when the lights were turned on in her apartment and she saw the appellant standing in her room with a gun in his hand and the letter from her attorney. She asked the appellant how he got into the room and he said he had picked the lock. He further stated that he had been in the apartment several times while the prosecutrix was away staying with her friends.

The appellant then insisted that the prosecutrix engage in oral copulation with him. She refused, but he finally forced her by placing a gun at her head and counting to ten. Then he ordered her to pack her possessions. She states that she stalled and took as much time as possible, hoping that as dawn approached, her girl friend would call her by telephone as arranged. She testified the appellant had his gun with him and insisted upon her hurrying. She was frightened and afraid to attempt to flee. She testified that before they left he again ordered her to submit to sexual indignities. Once they were in the car and on the way, the appellant told her that he would kill her if she attempted to outwit him. Upon leaving the prosecutrix' apartment, the appellant ordered her to stop at his place of employment where he got inside and took a television set and then directed her to drive to Goshen.

When Helen Pyles, Mrs. Brockmeyer's girl friend, called that morning she received no answer and she immediately contacted the Fort Wayne police, who said they could not accept calls from every hysterical female. Miss Pyles, however, went with the police to the prosecutrix' apartment and found the same in disarray and the door unlocked.

The appellant directed the prosecutrix to drive to his parents' home on Lake Wawasee. There, when the appellant got

out of the car to shovel snow out of the road, the prosecutrix made an attempt to start the car and escape, but the snow prevented moving the car. The appellant then took the keys from the car and drove it to a nearby filling station to get oil. There the prosecutrix made her escape by slipping under the wheel and driving off. At Cromwell, Indiana she succeeded in getting a filling station operator to call the police. When the police arrived they testified the prosecutrix was nervous and excited, and she was returned to Fort Wayne. She gave her statement to the state police, who checked out the blood test examiner, certain telephone calls made by the appellant and the statements of Helen Pyles, the apartment custodian, and others with reference to corroborating the prosecuting witness' statements of her desire to break off her relationship and the forced attentions of the appellant. Even after the arrest of the appellant he called Mrs. Brockmeyer and threatened her and came to her apartment, but another tenant prevented him from entering. There is other evidence which would support the court's finding that Mrs. Brockmeyer, by reason of threats, was induced by fear to go with the appellant at the time of the alleged kidnapping.

The above detailed summary of the evidence shows that there is every element of the offense of kidnapping.

The appellant makes a diligent and conscientious attack upon the credibility of the prosecuting witness. At the same time, the credibility of the appellant is no better, if it is not worse, by reason of his admitted criminal record involving sexual offense. The prosecutrix' testimony is not entirely uncorroborated. Her girl friend, Miss Pyles, testified as to the apprehensions and fears of Mrs. Brockmeyer long before the actual kidnapping took place, as well as the custodian who testified as to placing locks on her apartment, and as well as the lawyer who wrote a letter to the appellant, stating that she did not wish to have the appellant force his attentions on her and he should leave her alone. The blood examiner at the hospital testified as to Mrs. Brockmeyer's fear and desire to

have the blood test delayed. A police officer testified that the appellant admitted attempting to choke the prosecutrix at one time. The front door at her apartment was left unlocked on the night of the alleged kidnapping. The appellant claimed that Mrs. Brockmeyer called him at 8:00 o'clock on the evening of the kidnapping and asked him to come over to her apartment. However, this is contradicted by the maintenance man of the apartment who was staying with her that evening until 10:30 and who testified that no such call was made by Mrs. Brockmeyer.

On the other hand, it is argued that the prosecutrix kept company with the appellant for a period of six months and it might be concluded there were some voluntary intimate relationships between them during that time from some of the testimony. Be this as it may, we cannot refrain from stating that even an intimate relationship between a man and woman grants no license on the part of the man to rape or kidnap such woman, when he finds such attentions are repulsed or when she decides to break off the relationship.

From all the evidence in the case, we do not feel that on appeal we should disturb the finding and conclusions of the trial court who heard the witnesses and must determine the credibility of the evidence.

The judgment of the trial court is affirmed.

Myers, C. J., concurs. Jackson, J., concurs in result. Rakestraw and Achor, JJ., not participating.

NOTE.—Reported in 214 N. E. 2d 165.