GREEN *v.* STATE OF INDIANA.

[No. 30,641. Filed September 26, 1967. Rehearing denied November 14, 1967.]

*Olsen and Niederhaus,* of Evansville, for appellant.

*John J. Dillon,* Attorney General, and *Douglas B. McFadden,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by indictment with the crime of murder in the second degree, and was tried by jury in the Vanderburgh Circuit Court, which returned its verdict finding the appellant guilty of manslaughter. Thereafter, on April 13, 1964, appellant was sentenced by the court to the Indiana State Prison for not less than two (2) years nor more than twenty-one (21) years.

The indictment, omitting caption, formal parts, endorsements on the back and signatures, reads as follows:

"The Grand Jurors for the County of Vanderburgh and State of Indiana, upon their Oaths, present and charge that OSCAR GREEN on or about the 24th day of DECEMBER A.D., 1962, at said County unlawfully, feloniously, purposely and maliciously, but without premeditation, did kill and murder LILLIAN RUTH GREEN, a human being, by then and there unlawfully, feloniously,

purposely and maliciously, but without premeditation, shooting at and against the said LILLIAN RUTH GREEN with a certain pistol loaded and charged with gunpowder and bullets, and thereby mortally wounded the said LILLIAN RUTH GREEN with a bullet discharged and shot as aforesaid, from which mortal wound the said LILLIAN RUTH GREEN then and there sickened and languished and thereafter died on the 25th day of December, 1962. And so the Grand Jurors aforesaid, upon their oaths aforesaid, so find and say that the said OSCAR GREEN did unlawfully, feloniously, purposely and maliciously, but without premeditation, kill and murder the said LILLIAN RUTH GREEN, in manner and form aforesaid.

"Contrary to the form of the statute, in such cases made and provided, and against the peace and dignity of the State of Indiana."

Appellant tested the sufficiency of the indictment by Motion to Quash on the grounds:

"1. That the facts stated in the Indictment do not constitute a public offense.

"2. That the Indictment does not state the offense charged with sufficient certainty."

The motion was supported by a memorandum containing fifteen specifications.

Such Motion to Quash was submitted without argument and was overruled by the court, whereupon appellant was arraigned, entered a plea of not guilty and requested trial by jury, which request was granted and a jury ordered.

On February 25, 1963, appellant filed motion and affidavit for change of venue from the judge. The motion was sustained. Willard Schrode was selected as Special Judge and thereafter qualified as such.

On March 18, 1963, appellant filed a motion for change of venue from the county, such motion alleging in substance that he could not have a fair and impartial trial of the cause in said county on account of the excitement and prejudice existing in Vanderburgh County against him.

Thereafter, by leave of court, appellant filed his amended affidavit for a change of venue from the county. Said affidavit, omitting caption, formal parts, signature and exhibits filed in support thereof reads as follows:

"Oscar Green, being first duly sworn upon his oath, says that he is the defendant in the above entitled cause of action, and this affiant says that he cannot have a fair and impartial trial of this cause in Vanderburgh County, State of Indiana, for the following reason, to-wit:

"1. On account of the excitement and prejudice in Vanderburgh County against this defendant which excitement and prejudice this affiant says now exists by reason of the recent publicity coupled with the investigation and the attempt of revocation of the Alcoholic Beverage License of the location where the alleged murder took place.

"2. That excitement and prejudice in Vanderburgh County now exists against the defendant in that the newspapers of Vanderburgh County, namely, The Evansville Courrier (sic) and The Evansville Press have repeatedly connected the death of Lillian Ruth Green as an employee of a certain tavern in that the reputation and character of said tavern was of such a nature as to prejudice the defendant in his defense.

"3. That the newspapers of Vanderburgh County, namely, the Evansville Courrier (sic) and The Evansville Press, repeatedly stated that the law enforcing agency of the City of Evansville, the County of Vanderburgh, the State of Indiana, stated that the situs of the alleged crime as being such a one where other crime repeatedly happened has brought a state of excitement and prejudice against this defendant and said excitement and prejudice still exists.

"4. That the television and radio stations of Vanderburgh County, Indiana, have repeatedly stated that the law enforcing agencies of Vanderburgh County, Indiana, were attempting to close the situs where the alleged crime occurred and in most instances have stated that said alleged crime occurred at said situs so repeatedly to have brought about the excitement and prejudice against this defendant and that said excitement and prejudice still exists.

"5. That the Evansville Courrier (sic) and the Evansville Press as well as the news media of Television and radio stations located in Vanderburgh County, Indiana, have so linked the defendant with the law enforcing

agency's accusations against the situs where said crime occurred and the law enforcing agency's attempt to close said location and that such accusations have been so widely publicized that the defendant cannot receive a fair and impartial trial as in that the minds of all prospective jurors in Vanderburgh County, Indiana, are so saturated with this information it would not help but make them prejudice.

"6. That the news media of one of the radio stations, WROZ Radio Evansville, of the City of Evansville, Indiana, on over seventy (70) occasions broadcasted stories about the alleged crime coupled the alleged crime with the action on the part of the law enforcing agency of the City of Evansville, the County of Vanderburgh, the State of Indiana, in attempting to close the situs where said alleged crime occurred.

"7. That this defendant is filing herewith Defendant's Exhibits one (1) through seventeen (17) which are copies of the news medium from a radio station, to-wit: W R O Z Radio Evansville, in the City of Evansville, Indiana, that the other news media have broadcasted about the alleged crime connecting said alleged crime in most instances with the action on the part of the law enforcing agency of the City of Evansville, the County of Vanderburgh, the State of Indiana, in attempting to close the situs where said crime occurred in a total number to exceed one hundred (100) times but that this defendant is without funds to procure the exhibits of the same.

"8. That other news media of the television stations covering the news of the City of Evansville, Indiana, on more than sixty (60) occasions televised stories about the alleged crime connecting said crime in most instances with the action on the part of the law enforcing agency of the City of Evansville, the County of Vanderburgh, the State of Indiana, in attempting to close the situs where said alleged crime occurred. That the script of said television stations is available but this defendant is without funds to furnish the same.

"9. That the Evansville Courier and the Evansville Press and all radio and television stations in this locality have recently published, broadcasted or televised the action of the law-enforcing agency of the City of Evansville, County of Vanderburgh, the State of Indiana, in attempting to close the operation of the tavern where the alleged crime occurred.

"10. That the law enforcing agency of the City of Evansville, the County of Vanderburgh and the State of Indiana have repeatedly stated the situs of where the crime occurred as being operated in such a manner as to put odium to anyone who would be in said location thereby exciting prejudice against this defendant.

"11 That the law enforcing agency of the City of Evansville, the County of Vanderburgh, the State of Indiana, have publicially (sic) stated in public address that the situs of said crime of which moral turpitude could be inferred to anyone who was at said situs at any time thereby to such an extent as to arouse excitement and prejudice against the defendant in Vanderburgh County.

"12. This investigation and hearing occurred in Indianapolis, Indiana. Over forty (40) or more witnesses testified and repeatedly the alleged crime was connected with said investigation and that constantly since the date of the alleged crime, December 24, 1962, until as late as March 31, 1963, making statements as to how, where, and when said alleged crime occurred repeatedly connecting the situs of said alleged crime as a place of low morals. That connecting the deceased as an employee of said tavern and in direous (sic) and other ways a place of odium on said location to such an extent as to arouse excitement and prejudice against the defendant and said excitement and prejudice does hereby exist.

"13. That this defendant is filing herewith Defendant's Exhibits eighteen (18) through forty (40) which are pages and articles from the different newspapers which publicized the alleged crime for which the defendant is being tried and also spoke of the situs of the alleged crime.

"WHEREFORE, the defendant prays for a change of venue from Vanderburgh County, Indiana."

On May 2, 1963, the State of Indiana filed a counter affidavit to appellant's Motion for Change of Venue, the same, omitting caption, formal parts and signature, reads as follows:

"Milford M. Miller, being first duly sworn upon his oath says:

"That he is Chief Deputy Prosecutor of and for Vanderburgh County, Indiana and that he makes this counter affidavit for and on behalf of the State of Indiana herein, in response to the amended affidavit for change of venue from

the county, heretofore filed herein by the defendant, and further says:

"1. That no excitement or prejudice exists or has existed in Vanderburgh County, Indiana against the defendant, Oscar Green, or his defense in connection with the crime for which he stands charged by indictment herein.

"2. That the said defendant's amended affidavit for change of venue from the county herein fails to show that the defendant, Oscar Green, cannot have a fair and impartial trial in this cause in Vanderburgh County, Indiana because of excitement or prejudice existing in Vanderburgh County against him.

"3. That defendant's amended affidavit for change of venue from the county and each and all of the defendant's exhibits one (1) to forty (40), inclusive, filed as a part of said defendant's amended affidavit, fail to show that excitement or prejudice exists in Vanderburgh County, Indiana against this defendant or his defense of or in connection with the crime of second degree murder, for which said defendant stands charged by indictment herein."

Thereupon the court denied appellant's motion and reset the cause for trial.

After continuances had by both the appellant and the State, this matter came to trial March 18, 1964, before a jury. At the conclusion of the evidence offered by the State, the appellant filed a motion for a directed verdict, which motion was overruled by the court. The appellant rested without introducing any evidence and again filed a motion for a directed verdict asserting that the State had failed to prove beyond a reasonable doubt that he had killed Lillian Green as charged in the indictment nor had it proved that he had committed any crime that would be an included offense under said indictment.

The court again overruled appellant's motion for directed verdict, whereupon the jury retired and thereafter returned its verdict finding appellant guilty of manslaughter as hereinabove stated. Thereupon the court ordered a pre-sentence investigation of appellant and deferred sentence until a later date. On April 13, 1964, the Probation Officer filed his pre-

sentence investigation report, and the court imposed a two to twenty-one year sentence on appellant as heretofore stated.

Appellant's Motion for a New Trial, omitting caption, formal parts and signatures contains five (5) grounds as follows:

"1. Irregularities in the proceeding of the Court and Orders of Court and abuse of discretion by which the Defendant was prevented from having a fair trial, in this, to-wit:

"A. The Court erred in refusing the Defendant's Affidavit for a Change of Venue from the County.

"B. The Court erred in refusing the Defendant's Amended Affidavit for a Change of Venue from the County.

"2. Error of law, in this, to-wit: That the Court erred in overruling the Defendant's Motion to Quash.

"3. That the verdict of the Jury is contrary to law.

"4. That the verdict of the Jury is not sustained by sufficient evidence.

"5. Error of law, occurring at the trial, in this, to-wit: That the Court erred in giving of it's own Motion Instructions Numbers One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), Nine (9), Ten (10), Eleven (11), Twelve (12), Thirteen (13), Fourteen (14) and Fifteen (15) over Defendant's objections."

Appellant's Assignment of Errors, omitting caption, formal parts and signatures contains four (4) specifications as follows:

"1. The Court erred in overruling the Appellant's Motion For a New Trial.

"2. The Court erred in refusing the Defendant's Affidavit for a Change of Venue from the County.

"3. The Court erred in refusing the Defendant's Amended Affidavit for a Change of Venue from the County.

"4. The Court erred in overruling Appellant's Motion To Quash."

In the argument section of his brief on appeal, appellant relies on two issues for reversal, viz., (1) The trial court

abused its discretion in overruling the Amended Affidavit for a Change of Venue from the County, and (2) The evidence was not sufficient to sustain the verdict of the jury. All other issues raised in the Motion for New Trial and in the Assignment of Errors have been waived by appellant's failure to support them with argument.

The first point on which appellant relies is the contention that the trial court abused its discretion in overruling his amended affidavit. He argues the amended affidavit contained clear and uncontradicted evidence that there was excitement and prejudice against him in Vanderburgh County as a result of the notoriety which had been attached to the case by the local news media. We disagree with the conclusion reached by the appellant that the rule of law that facts not denied are admitted is applicable here because the facts alleged in his amended affidavit and the exhibits were not contradicted by the State in any manner. The State filed its counter affidavit in three paragraphs catagorically denying the averments of appellant's amended affidavit. Admittedly, the State did not, and, we think we may fairly say, could not, file an equal or greater number of exhibits with the counter affidavit showing appellant to be the man of the year, the outstanding citizen in the community, the darling of the press, or the champion of the people. Few persons accused of crime are able to produce such extravagant press or other releases in their behalf. The question presented to this Court for judicial determination is, did the moving party, appellant, by his affidavit and exhibits make such a showing as would require this Court to say the trial court abused its discretion in denying appellant a change of venue from the county?

Appellant admits that Acts 1905, ch. 169, § 207, p. 584, § 9-1305, Burns 1956 Replacement, specifically provides that it is discretionary with the court in non-capital cases to grant a change of venue from the county. While some of the exhibits are repetitious, and while the names of

appellant, decedent and other members of the family appear in many of the articles, we cannot say as a matter of law that the trial court abused its discretion in denying appellant's motion for change of venue from the county.

The second point upon which appellant relies is that the verdict of the jury was not sustained by sufficient evidence. He contends that the State failed to prove every essential element of either voluntary or involuntary manslaughter.

Appellant was indicted for the crime of second degree murder. The jury found him guilty of manslaughter which is defined by Acts 1941, ch. 148, § 2, p. 447, § 10-3405, Burns' 1956 Replacement, as follows:

> "Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat, or involuntarily in the commission of some unlawful act, is guilty of manslaughter."

In the above statute, manslaughter is divided into two grades, to-wit: voluntary and involuntary. Although being classed and defined in the same section, they are widely and essentially different. Voluntary manslaughter is the intentional killing of a human being without malice in a sudden heat. Involuntary manslaughter is the unintentional killing of a human being while in the commission of an unlawful act.

Appellant contends that a close review and analysis of the transcript fails to show any substantial evidence to sustain the conviction of voluntary manslaughter. He contends the shooting which caused the death of Lillian Green was not intentional, nor was it committed in a sudden heat. Appellant further contends there is no evidence presented by the State that proves beyond a reasonable doubt that the appellant had an intention to kill. Finally, he contends the State did not prove the essential elements of involuntary manslaughter, namely, the killing of a human being in the commission of some unlawful act. It being his contention that

there was a total lack of evidence as to the commission of any unlawful act on his part.

This cause was tried by a jury. The jury is the sole judge of the law and the evidence. They determine the weight of the evidence and the credibility of the witnesses. On appeal, we will not weigh the evidence. We only consider the evidence most favorable to the State and the reasonable and logical inferences that may be drawn therefrom. *Willoughby* v. *State* (1966), 247 Ind. 210, 214 N. E. 2d 169; *Swartz* v. *State* (1966), 247 Ind. 166, 214 N. E. 2d 165; *Gilmore* v. *State* (1951), 229 Ind. 359, 98 N. E. 2d 677; *Oldham* v. *State* (1946), 224 Ind. 150, 65 N. E. 2d 414.

The evidence most favorable to the State shows that Lillian Ruth Green died as a result of a bullet wound that destroyed part of her brain. There is no controversy over the fact that the gun, from which the fatal bullet was discharged, was in the hand of the decedent and was being contested for by appellant and decedent at the time it fired. Appellant admitted that he had drunk five or six beers and a shot of whiskey in a period of about two hours prior to the shooting. The decedent, appellant's wife, was a prostitute. She told appellant she had met a guy who was going to give her some money. She refused to go home or elsewhere with appellant. Finally, she pulled a gun and pointed it at him saying, "I'm going back to the bar room and you go on home." When appellant told her to put the gun up saying it was silly, she said, "I'll show you how silly it is." She then cocked the gun. Appellant grabbed for the gun trying to aim it toward the ceiling, and it went off. Appellant left the tavern and fled with his son to Colorado where he left the boy with relatives. He then went to his sister's home in Hermiston, Oregon, where he surrendered to the police. Most of the above evidence was contained in a statement made by the appellant to the police in Oregon. The statement was admitted into evidence by the State without objection by appellant. A second statement made by the appellant, which

was also introduced into evidence without objections, was quite similar, but it contained additional comments by appellant as follows:

". . . While there I drank about four beers and one shot of liquor. She was drinking whiskey. I don't recall how many she drank while I was there. *We got into an argument between us* . . . I asked her why couldn't we go to some where else and drink a beer or two. She told me, why don't you go on home and leave me alone. *There were more words between us but I don't remember what was said.* She pulled a gun out of her purse. She had been carrying this gun. She always carried this gun. She bought it in Azirona, about a year ago. It was .22, small, dark colored, about 4 to 6 inches long. She had pulled the gun on me about two or three weeks before this while we were home. She pointed the gun at me, I grabbed her hand, I guess I got a hold of the gun and her hand and it went off. She fell backwards. I held on to the gun. I ran out the side door." (Emphasis supplied.)

From all the facts and circumstances brought out at the trial, the jury may have determined that appellant was jealous of his wife, angry because she would not leave with him, incensed because she pointed a loaded pistol at him and in a sudden heat committed the crime of which he was convicted.

In any event, there is sufficient evidence of probative value in the record to sustain the verdict of the jury. It necessarily follows that to sustain the conviction on the theory of an included offense it must be on the theory that appellant was convicted of the crime of voluntary manslaughter.

The judgment is affirmed.

Hunter, C. J., Lewis and Arterburn, JJ., concur.

Mote, J., concurs in result.

NOTE.—Reported in 229 N. E. 2d 726.