**Sharon K. REAMES, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1283S458.**

Supreme Court of Indiana.

Sept. 24, 1986.

Susan K. Carpenter, Public Defender, C.H. Gardner, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael G. Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of murder I.C. § 35–13–4–1. A jury tried the case. Appellant received an indeterminate sentence of fifteen to twenty-five years.

The procedural story of this case is set forth here. On February 17, 1983, the State charged appellant by amended information with First Degree murder. The information alleged that appellant committed the murder on September 1, 1977. On February 17, 1983, appellant entered a plea of not guilty. On February 22, 1983, the first trial commenced and on February 28, 1983, it ended in a hung jury. On May 16, 1983, the second trial commenced and on May 19, 1983, the jury returned a verdict of guilty of second degree murder, fixing sentence at fifteen to twenty-five years. Subsequently, the trial court entered judgment of conviction and it sentenced her accordingly. On August 15, 1983, appellant filed a Motion to Correct Errors which the trial court denied on September 30, 1983.

These are the facts from the record which support the determination of guilt. On September 1, 1977, the victim, Donald Presser was drinking and socializing at the Orlando Lounge in Elkhart, Indiana. He had a sizeable amount of money with him, and he bought drinks for others in the lounge. Appellant was also at the lounge.

The next afternoon on September 2, 1977, an ambulance responded to a call, and the ambulance team discovered the victim dead in his pick-up truck in front of his apartment. The victim died from a skull fracture and a brain hemorrhage which were the result of approximately two blows from a blunt instrument. There was only fifty cents on the victim's body, and his right pants pocket was in an inside out position. His fly was unzipped. On September 29, 1982, police arrested appellant under a warrant on another charge. Appellant admitted to being with the victim in his pick-up and to hitting the victim on the head with a pipe-like instrument. She said she hit him because he was attempting to force her to give him fellatio. She repeated this story in a subsequent oral statement later in the day. On September 30, 1982, she gave another written statement in which she admitted hitting the victim with a pipe-like instrument.

Appellant raises eight issues on appeal: (1) whether the trial court erred in permitting the State to read appellant's confession to the jury during its opening argument; (2) whether the trial court erred in permitting the State to discuss the holding of a case with a witness; (3) whether the trial court erred in excluding certain photographs; (4) whether the trial court erred in permitting references to appellant's activity as a prostitute; (5) whether the trial court erred in prohibiting a witness from testifying to certain conversations he had with appellant; (6) whether the trial court erred in permitting a witness to testify with respect to appellant's oral confession; (7) whether the trial court erred in permitting the State to make allegedly improper comments during closing argument; and (8) whether the trial court erred in denying appellant's motion for new trial due to alleged juror misconduct.

I

Appellant argues that the trial court erred in permitting the State to read appellant's confession to the jury during opening argument. She contends that the admissi-

bility of the confession was still unresolved. However, there was no objection, consequently, appellate review is foreclosed. See *Burris v. State*, (1984), Ind., 465 N.E.2d 171.

Furthermore, the trial court subsequently admitted the confession into evidence. As a result, appellant has suffered no prejudice or impingement upon her substantial rights.

## II

Appellant contends that the trial court committed error in sanctioning questioning on cross-examination of a defense witness by the trial prosecutor, which included an express reference to the facts and the holding of a particular Indiana case. Counsel concedes that he has found no case directly on point, and he surfaces those cases which appear to condone like references during argument, subject to close regulation by the trial judge. *Lax v. State* (1981), Ind., 414 N.E.2d 555. *Schlabach v. State* (1984), Ind.App., 459 N.E.2d 740.

Defense counsel adopted the trial strategy of calling as a witness the lawyer, who had formerly represented appellant, to attack the weight, credit and voluntariness of the confessions. He testified on direct examination that the police, after being informed that he represented appellant, took a second confession from appellant without notifying him. In response, the trial prosecutor on cross-examination questioned the former counsel regarding his knowledge of an Indiana case which may have held that notification of this sort by the police was not necessary. The first direct question in this line was not objected to and former counsel answered that he was not acquainted with that case. Several questions of the same type regarding the same case were then asked and received like answers. Defense counsel posed objections based upon the first negative answer. One was successful, another not.

It can only be concluded here that the grounds for the objections to these questions were that the witness did not have knowledge upon which to base an answer, and were not that the questions included specific legal references. This difference precludes consideration of the issue presented on appeal. *Davidson v. State* (1982), Ind., 442 N.E.2d 1076.

## III

Appellant argues that the trial court erred in excluding certain photographs due to appellant's non-compliance with a discovery order. Appellant's present counsel admits that he cannot find any such exclusion of photographs in the trial record. As a result, he relies on trial counsel's argument in the Motion to Correct Errors memorandum.

It is well settled that it is the duty of the defendant to present a complete record to this Court. Bare assertions of error not disclosed by the record are not available for review by this Court. *Brown v. State* (1981), 275 Ind. 441, 417 N.E.2d 333, 337.

## IV

Appellant argues that the trial court erred in permitting references to her activity as a prostitute. She contends that prostitution does not qualify as an *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210 offense; consequently, it was ineligible to be used to impeach her credibility.

On direct examination, State's witness Bowers testified as follows:

Q. ... Do you know what Sherry Reames' business occupation or profession was?

A. I can't say for sure.

Q. Do you know what it was?

A. I think she was a prostitute.

On direct examination State's witness Campbell testified as follows:

Q. Did you know what her business, occupation or profession was?

A. Yes, sir.

Q. What was that?

A. Prostitute.

On cross-examination of defense witness Devore, the State attempted to ask the question again:

Q. Did you know their business, profession or occupation?

Appellant objected to the question on the grounds that it was irrelevant because it referred to past incidents. The trial court sustained the objection.

■ On cross-examination of appellant, the State elicited the following testimony:

Q. And isn't it also true that you worked for a period of time as a prostitute?

A. I did for a while, yes.

Q. And for how long a period of time were you a prostitute?

A. Oh, I'd say about a year or so.

There were no objections to these questions or to the testimony of witnesses Bowers and Campbell. Furthermore, there was no objection to the questions asked appellant.

"Unless a party makes an appropriate objection to the admission of evidence, there is no error in allowing the admission of the evidence and the evidence which would be inadmissible may be considered by the court or jury when the evidenced is admitted without objection."

*Handbook on Indiana Evidence, ISBA* pp. 20–21; see also *Klingler v. Ottinger* (1939), 216 Ind. 9, 17, 22 N.E.2d 805, 809.

"If the administration of the exclusionary rules of evidence is to be fair and workable the judge must be informed promptly of contentions that evidence should be rejected, and the reasons therefor. The initative is placed on the party, not on the judge.... [A] failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver upon appeal of any ground of complaint against its admission".

*McCormick on Evidence*, 3d Ed., § 52. See also *Richey v. State* (1981), Ind., 426 N.E.2d 389, 395; *Tabor v. State* (1984), Ind., 461 N.E.2d 118, 123. A prompt objection affords the trial court an opportunity to prevent or remedy prejudice to a defendant without the considerable waste of time and resources involved in the reversal of a conviction. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. *Burris v. State* (1984), 465 N.E.2d 171, 187.

As for the testimony of witness Devore, it is clear that the trial court sustained appellant's objection. An objection that is sustained by the trial court cannot serve as the foundation for an argument on appeal. *Skaggs v. State* (1982), Ind.App., 438 N.E.2d 301, 305. By sustaining the objection, the trial court prevented any potential error which might have resulted from the question. See *Hemphill v. State* (1979), 270 Ind. 590, 387 N.E.2d 1324, 1327.

V

■ Appellant argues that the trial court erred in prohibiting her former attorney from testifying to certain conversations he had with her. The conversations allegedly concerned the voluntariness of her statements to the police. The State objected to two questions. The basis of the first objection was that the testimony the question sought consisted of self-serving hearsay. The trial court overruled this objection because the question merely sought the subject matter of a conversation. The basis of the second objection was that the question asked was actually a statement. The trial court sustained this objection.

No offer of proof was made.

"The usual practice is for the proponent to state to the judge what the witness would say if he were permitted to answer the question and what he expects to prove by the answer to the question ... the primary reason (for an offer of proof) is to include the proposed answer and expected proof in the official record of the trial, so that in case of appeal upon the judge's ruling, the appellate court may understand the scope and effect of the question and proposed answer in considering whether the judge's ruling sustaining an objection was proper".

*McCormick on Evidence* 3d Ed., § 51, cf. Ind.T.R. 43(C). Absent an offer of proof,

appellate review is foreclosed. *Elliott v. Roach* (1980), Ind.App., 409 N.E.2d 661, 682; *Pointon v. State* (1978), 267 Ind. 624, 372 N.E.2d 1159, 1162; *Swartz v. State* (1966), 247 Ind. 166, 214 N.E.2d 165.

Furthermore, appellant subsequently succeeded in placing before the jury testimony from her witness which supported her theory that her confessions were involuntary. For example:

Q. Did you say anything to them then.

A. Well, yes. I asked her if she had killed this man, and she said she had not. And I said, "Did you sign a statement or confession that you had." ... And she said yes, she had. And I said, "Why did you sign?" And she said, "Because they told me that if I didn't sign it I would spend the rest of my life in prison".

The witness also expressed his belief that he thought the police extracted the confession from her. We discern no predjudice or impingement upon appellant's substantial rights.

## VI

Appellant argues that the trial court erred in permitting Investigator Campbell to testify with respect to her oral confession. Prior to the first trial, she moved to suppress several statements on the grounds that they were involuntarily given. The trial court denied the motion. She objected on the basis of the motion at the second trial.

"Statement by an accused is not admissible against him if it is not voluntarily given. *Malloy v. Hogan* (1964), 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 ... In determining whether a statement was voluntarily given, we look to all the circumstances surrounding its giving to determine whether it was 'induced by any violence, threats, promises, or other improper influence.' *Montes v. State* (1975), Ind., 332 N.E.2d 786, 792 ... The burden is on the State to prove beyond a reasonable doubt the voluntariness of the statement or waiver. *Burton v. State*

(1973), 260 Ind. 94, 292 N.E.2d 790. In reviewing the trial court's ruling on the voluntariness of a statement of waiver, we do not weigh the evidence, but determine whether there is sufficient evidence to support the trial court's finding. *Raines v. State* (1971), 256 Ind. 404, 269 N.E.2d 378."

Here is the evidence which supports the trial court's determination of voluntariness. On September 29, 1982, at approximately 8:30 p.m., Detective Johnson arrested appellant. On the way to the police station, he advised her of her *Miranda* rights. She indicated that she understood those rights. In addition, she signed a waiver of rights form. Subsequently, Investigator Campbell interrogated her. She gave an incriminating oral statement. Investigator Campbell testified that appellant was not threatened, coerced, frightened, forced or induced to make a statement. At approximately 9:45 p.m., appellant gave a written statement. Testimony concerning this statement revealed that she was advised of her rights again, that she was not threatened or abused and that she gave the statement freely and voluntarily. On September 30, 1982, Detective Coryn interviewed her concerning allegations of police misconduct made by appellant's attorney. The pertinent part of his testimony is set forth here:

Q. What did you say to her ...?

A. ... I asked her if she felt that she had been threatened or coerced at any time since her incarceration.

Q. What did she say to you?

A. She stated, "No"

Subsequently, Detective Coryn advised her of her *Miranda* rights. She indicated that she understood them, and she gave another written statement. Detective Coryn further testified that she was not threatened or abused and that she gave her statement voluntarily. This evidence is sufficient to support the trial court's determination that the statements were voluntary and freely self-determined.

## VII

Appellant argues that the trial court erred in permitting the State to make allegedly improper comments during closing argument. Appellant preserved for appeal challenges to two comments by objecting at trial and by including them in her Motion to Correct Errors.

 The following procedure is employed in reviewing prosecutorial misconduct claims:

1. The Court first determines that the prosecutor in fact engaged in misconduct. This determination is made by reference to the case law and the disciplinary rules of the Code of Professional Responsibility as adopted in this State. See *Swope v. State,* (1975), [263], Ind., [148], 325 N.E.2d 193.

2. The Court then considers whether the misconduct, under all the circumstances, "placed [the defendant] in a position of grave peril to which he should not have been subjected." *White v. State* (1971), 257 Ind. 64, 78, 272 N.E.2d 312, 320 followed in *Warner v. State* (1976), Ind., 345 N.E.2d 178, 54 Ind.Dec. 481; *Rufer v. State* (1976), [264] Ind., [258], 342 N.E.2d 856; *Turczi v. State* (1973), 261 Ind. 273, 301 N.E.2d 752; *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409. The "grave peril" standard does not require the Court to find that the misconduct determined the outcome of the trial. *White,* supra, at 272 N.E.2d 319–20. This is the same standard which *White* mandates trial courts to observe in ruling on mistrial motions.

[8] 3. Whether the misconduct results in subjecting the defendant to "grave peril" is determined by the probable persuasive effect of the misconduct on the jury's decision, not by the degree of impropriety of the conduct. *Swope v. State, supra.*

[9] 4. Even if an isolated instance of misconduct does not establish grave peril, if repeated instances evidence a deliberate attempt to improperly prejudice the defendant, a reversal may still result. *Robinson v. State* (1973), 260 Ind. 517, 297 N.E.2d 409; *Garrett v. State* (1973), 157 Ind. App. 426, 300 N.E.2d 696.

*Maldonado v. State* (1976), 265 Ind., 492, 355 N.E.2d 843, 848. The text of the first challenged comment is set forth here:

"If you believed her story about the three confessions, then your job is simple. I want you to go back in that jury room, I want you to find her not guilty, and I want you to ride down that elevator with her.

The text of the second comment is set forth here:

"Both sides want to accomplish a different purpose. And doing what's best for your client may mean that you are doing something that is not in the same interests as those of society as a whole."

The first comment was not necessary, nor was it commendable; however, we cannot say that the comment placed appellant in such a position of grave peril that it warrants reversal of her conviction. The second comment is facially neutral in that it gives rise to two competing inferences: ie. that the State's interests are not commensurate with society's interests or that the defense's interests are not commensurate with society's interest. Nevertheless, even if the State conveyed the inference in its favor to the jury, no harm resulted to appellant because the trial court sustained her objection and ordered the comment stricken from the record.

## VIII

Appellant argues that the trial court erred in denying her motion for new trial. She contends that juror misconduct entitles her to a new trial. She claims that one of the jurors commented after the trial that she regretted giving in to the other jurors and that she did not feel the State had proven its case.

 A verdict may not be impeached by testimony of the jurors who

return it. *Bean v. State* (1984), Ind., 460 N.E.2d 936, 947.

"If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries."

*Stinson v. State* (1974), 262 Ind., 189, 198, 313 N.E.2d 699, 704.

The judgment of the trial court is affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ., concur.