Jesse LOPEZ, Appellant
(Defendant below)

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 64S00–8705–CR–483.

Supreme Court of Indiana.

Sept. 6, 1988.

Thomas J. Organ, Chicago, Ill., James A. Johnson, Portage, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On March 27, 1986, following a jury trial, Jesse Lopez was found guilty of Aiding in the Delivery of Cocaine, a class A felony, and of Dealing in a Sawed–Off Shotgun, a class D felony. On the charge of Aiding in the Delivery of Cocaine, Lopez was sentenced to the thirty (30) years determinate sentence to which the court added ten (10) years for aggravating circumstances. Lopez was further sentenced to a four (4) year term for the charge of possession of a sawed-off shotgun, the sentences to run concurrently. Lopez directly appeals raising several issues for our review, which we restate and renumber as follows:

1. whether the trial court erred by excluding the prior inconsistent statement of Pedro Rodriguez;

2. whether testimony about recorded telephone conversations violated the best evidence rule;

3. whether statements made by the deputy prosecutor constituted prosecutorial misconduct;

4. whether the State's failure to disclose an alleged agreement to reduce Rodriguez's sentence if he testified against Lopez constituted prosecutorial misconduct;

5. whether Lopez was denied effective assistance of trial counsel;

6. whether the trial court abused its discretion by failing to question a juror who had been accused of misconduct;

7. whether the trial court erred by modifying Lopez's tendered final instruction No. 1;

8. whether the trial court erred by giving the State's tendered final instruction No. 3;

9. whether the trial court erred in permitting opinion testimony from a D.E.A. Special Agent;

10. whether the trial court erroneously allowed Pedro Rodriguez to testify about statements made by Manuel Mendez, who did not appear at trial;

11. whether Lopez was denied due process of law by the court's consideration of material contained in the presentence report;

12. whether the trial court abused its discretion in sentencing; and

13. whether the trial court erred when it denied Lopez's motion to declare I.C. 35–48–4–1 and I.C. 35–50–2–2 unconstitutional.

The facts supporting the verdict below show that in early 1985, Michael Krawczyk, an undercover officer with the Porter County Narcotics Unit, was negotiating with Kathy Tuft to purchase two kilograms of cocaine. Tuft's friend, Pedro Rodriguez, called Krawczyk on March 5, 1985, and offered to help out with the drug purchase. Over the next week, Rodriguez and Krawczyk had several telephone conversations regarding the drug deal, all of which were tape-recorded. An agreement was reached wherein Rodriguez would sell Krawczyk a small sample of cocaine. That sale was concluded on March 6, 1985. The parties further agreed to transact the two-kilo drug deal on March 11th at 9:00 a.m. at the Indiana Toll Road Plaza.

On the morning of March 11th Rodriguez and Mendez had several discussions with Krawczyk, amended the quantity and price which had been agreed upon, and verified that Krawczyk had the money. At this same time, Defendant Lopez contends he was travelling from Knox to Gary with his family, in anticipation of leaving on vacation. Lopez claims they arrived at the home of Lopez's sister-in-law at approximately 11:00 a.m. Lopez intended to have his wife's car inspected prior to leaving on vacation and asked his sister-in-law if he could have that done at her house. Lopez planned to have Mendez look at the car since Mendez had worked on Lopez's cars in the past. This evidence conflicts with the testimony of Rodriguez, who claimed he and Mendez saw Lopez that morning prior to the drug deal in Lake Station at

the home of a woman named Debbie. Rodriguez, however, also gave a taped statement to police exonerating Lopez which was not allowed into evidence at trial.

Around noon on March 11th, Krawczyk and Rodriguez were waiting in Krawczyk's car at the plaza. Mendez and Lopez drove up behind them with Lopez driving. Rodriguez told Krawczyk, "Micky (Mendez) brought the main man with him," referring to Lopez. Mendez got out of his car and delivered one kilo of cocaine to Rodriguez and Krawczyk. Lopez never left the car. Krawczyk tested the drugs and signaled his fellow officers to effect the drug bust. Rodriguez surrendered, Mendez fled and Lopez was dragged from the car, forced to the ground and arrested. Lopez's handgun, a semi-automatic pistol, was found on the car seat under Lopez's leg, and a sawed-off shotgun was found under Lopez's seat. Two shotgun shells which fit the shotgun were found. The cocaine was analyzed and found to be 840.18 g. of 70% pure cocaine. At trial, Rodriguez named Lopez as the "main man", the source of the cocaine.

## I

Pedro Rodriguez pled guilty to the charges against him and testified for the State against Lopez. On direct examination Rodriguez testified that Lopez threatened him in jail if he would not inform Lopez's attorney that Lopez was innocent. Rodriguez admitted making the statement, but repudiated the contents of the statement, claiming he was coerced by Lopez's threats. During cross-examination, Lopez offered the tape into evidence to impeach Rodriguez's assertion he was in fear when he talked to defense counsel. The State opposed admission on the ground that extrinsic proof was improper since Rodriguez admitted making the inconsistent statement. The tape was not admitted. During cross-examination, Rodriguez was confronted with his prior statement and repeated his repudiation. After the State rested and before the defense began its case-in-chief, Lopez again moved for admission of the tape as impeachment evidence, but also as substantive evidence under *Patterson v.*

*State* (1975), 263 Ind. 55, 324 N.E.2d 482. Admission was denied again.

Lopez argues the trial court erred by excluding Rodriguez's prior inconsistent statement which was offered to impeach Rodriguez and as substantive evidence. However, to properly preserve an exclusion issue, the refused evidence must be placed in the record as an excluded exhibit. *Doerner v. State* (1986), Ind., 500 N.E.2d 1178, 1182; *Reames v. State* (1986), Ind., 497 N.E.2d 559, 563. Lopez has failed to include the tape in the record.

■ Lopez asserts the statements should have been admitted so the jury could determine whether Rodriguez's explanation of coercion was valid. He further claims that pursuant to *Patterson*, this court would permit the use of the statements for impeachment purposes and as substantive evidence. The State concedes the statement may have been admissible. *See Music v. State* (1983), Ind., 448 N.E.2d 1082, 1085–86; *Fletcher v. State* (1982), Ind., 442 N.E.2d 990, 992–93; *Cook v. State* (1978), 269 Ind. 227, 379 N.E.2d 965, 966. However, a new trial will be ordered only on a demonstration that the error resulted in such prejudice that the appellant was denied a fair trial. *See Henderson v. State* (1983), Ind., 455 N.E.2d 1117, 1119; *Martin v. State* (1983), Ind., 453 N.E.2d 1001, 1006. The erroneous exclusion of evidence will be deemed harmless if the same facts are admitted through other means because the excluded evidence would then be only cumulative with the admitted evidence. *Reames*, 497 N.E.2d at 564; *Smith v. State* (1968), 250 Ind. 125, 131–32, 235 N.E.2d 177, 181.

Here, although the statement was not played for the jury, the relevant contents were acknowledged by Rodriguez and fully revealed to the jury during his direct and cross-examination. Lopez does not allege that the jury was uninformed about any relevant comment by Rodriguez in the statement. Lopez argues that playing the tape would have increased the credibility of and probative value of the prior statement over Rodriguez's directly contradictory tri-

al testimony. However, the jury had ample evidence to judge Rodriguez's in-court repudiation. Thus, as Lopez has not shown how he was harmed, nor that the harm prejudiced the result, any error in excluding the tape is not reversible error.

## II

■ Lopez argues that Officer Krawczyk's testimony about his recorded telephone conversations with Rodriguez violated the best evidence rule, and that the recordings should have been played. However, when a witness has personal knowledge of the facts contained in the best evidence, the best evidence rule will not bar the witnesses' testimony since the witness is not being asked to reveal the contents of the best evidence, but rather is being asked to recall his own independent observations. *Jackson v. State* (1980), 274 Ind. 297, 299–301, 411 N.E.2d 609, 611–12. *Accord, Steele v. State* (1988), Ind., 519 N.E.2d 559, 560; *Gerrick v. State* (1983), Ind., 451 N.E. 2d 327, 333. Krawczyk was asked to relate the contents of his telephone conversations with Rodriguez wherein the cocaine deal was arranged. He was not asked to give the contents of the recordings. Therefore, the best evidence rule is inapplicable.

■ Further, Lopez fails to show any harm resulting from Krawczyk's testimony. Lopez merely asserts that the failure to present the jury with the best evidence prejudiced him in that it permitted officer Krawczyk to be selective in his characterization of the substance of the conversations. To be entitled to reversal, Lopez must show there was error prejudicial to his substantial rights. *Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1105. An effective objection must identify an actual dispute over the accuracy of the secondary evidence. *Jackson,* 274 Ind. at 301–302, 411 N.E.2d at 612. Lopez was provided with all of tapes of the 15 to 20 conversations before trial and, presumably, was aware of their contents. Neither at trial nor on appeal has Lopez alleged any inaccuracy in Krawczyk's testimony about the conversations. Consequently, even if we deemed the best evidence rule applicable,

any error was harmless inasmuch as there was no dispute as to the accuracy of the testimony. For these reasons, we cannot say that the trial court erred in permitting Krawczyk's testimony.

## III

Lopez claims various statements made by the deputy prosecutor during final and rebuttal argument constituted prosecutorial misconduct which placed him in a position of grave peril and deprived him of a fair trial.

■ In reviewing a charge of prosecutorial misconduct, this court first determines whether there was misconduct by the prosecutor, and second, considers whether that misconduct under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected. This position is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant. *Bixler v. State* (1984), Ind., 471 N.E. 2d 1093, 1102–03, *cert. denied* (1985), 474 U.S. 834, 106 S.Ct. 106, 88 L.Ed.2d 86; *Maldonado v. State* (1976), 265 Ind. 492, 498–99, 355 N.E.2d 843, 848. Prompt objection at trial is required as a prerequisite to appellate review. *See Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. Lopez raised no objection below to any of the comments of which he now complains. He has consequently failed to preserve for review any alleged misconduct occurring during final argument.

■ Assuming *arguendo* that this argument has not been waived, we will examine Lopez's allegations. Lopez claims fundamental error in the deputy prosecutor's comments during rebuttal, which allegedly implied a superior knowledge and invited the jurors to inquire of her, after the trial, why potential State witnesses were not called. Lopez is correct that counsel during argument must not imply a superior personal knowledge, or otherwise suggest

to the jury that he has additional, undisclosed evidence of either guilt or innocence, which may induce the jury to decide the case on reliance on matters outside the evidence. *Nagy v. State* (1987), Ind., 505 N.E.2d 434, 438; *Burris*, 465 N.E.2d at 188. The deputy prosecutor's statement was:

> Let me respond to some of the arguments of counsel on why didn't the State call X, Y and Z, why didn't the State do such and such and such and such. It is not your job to speculate on what is outside the courtroom. Your job is to determine what the evidence in this case shows. If you want to ask me afterwards why Manuel Mendez was not called, I will be more than happy to tell you, but you must and your duty is to decide this case on what was presented in the courtroom. Say to me why not call the lady out in Lake Station? I will tell you. Manuel Mendez. Why not play the tapes? I will tell you.

Thus, the deputy prosecutor implied no personal, undisclosed evidence of Lopez's guilt. Although she suggested undisclosed reasons for not calling certain witnesses, she was merely responding on rebuttal to Lopez's argument which repeatedly emphasized the absence of the witnesses and the inferences that could be drawn therefrom. Argument otherwise objectionable may be justified if provoked or invited by the opposing counsel. A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would be otherwise objectionable. *Denes v. State* (1987), Ind., 508 N.E.2d 6, 11; *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248, 256; *Lyda v. State* (1979), 272 Ind. 15, 395 N.E.2d 776, 779–80. The deputy prosecutor's comments were not misconduct and were justified by defense counsel's argument.

Lopez complains the prosecutor made a statement of her belief which was unwarranted, unsupported by the evidence, and calculated to prejudice him. The prosecutor, on rebuttal, stated to the jury:

> The State needs to prove each essential element beyond a reasonable doubt. I submit to you that if you believe that the Defendant is guilty of aiding in the delivery of cocaine, then the State has met its burden. Let me read to you the information as to what we have to prove, because I don't want there to be any type of confusion over this. I know you have heard it two times, at least, in this, but the information reads that Krawczyk swears that Lopez, on or about the 11th day of March, 1985, did knowingly or intentionally aid, induce or cause another person, to wit: Manuel Mendez to commit an offense, to wit: delivery of cocaine in an amount in excess of three grams, said Jesse Lopez aiding in the delivery by one, surveilling the scene of the delivery prior to the actual delivery, by driving Manual Mendez to the point of the delivery, by waiting in his vehicle for Manuel Mendez to complete the delivery and then drive him away from the delivery and then by waiting in his vehicle with a loaded weapon to assist Manuel Mendez in case the police interfered with the delivery. That's what is charged. It is not that he is a middle man, main man. It is my belief he is. That is what we have to prove beyond a reasonable doubt, and that can be done without Pedro Rodriguez.

The deputy prosecutor's comment emphasized to the jury that whether Lopez was the main man was not an issue for their resolution, and that conviction was not dependent on such a determination. The personal opinion expressed was not directed to Lopez's guilt, but rather to the extent of his involvement. Also, the comment was supported by the testimony of Rodriguez and Krawczyk and was not independent of the evidence. *See Nagy*, 505 N.E.2d at 438. During final argument, defense counsel disputed Rodriguez's assertion that Lopez was the main man. The comment therefore represented a proper response to Lopez's argument, which justifies what otherwise would be improper personal opinion. *See Grassmyer*, 429 N.E.2d at 256.

Lopez challenges the prosecutor's statement, "[t]he main man must come out to protect his investment." He claims this prejudical comment about the prosecutor's

beliefs denied him a fair trial. However, this conclusion was supported by the evidence and therefore represents an appropriate comment on the evidence from the deputy prosecutor's analysis. *See Cheney v. State* (1985), Ind., 486 N.E.2d 508, 511.

■ Lopez challenges the deputy prosecutor's statement regarding the police officer witnesses that, "[t]hey are professional, and I will stand by them any day over the likes of Jesse Lopez." However, a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence. *Denes,* 508 N.E.2d at 11; *Nagy,* 505 N.E.2d at 438. Here, the deputy prosecutor merely expressed her obvious preference for her own witnesses.

■ Lopez challenges the deputy prosecutor's eliciting of the following testimony from Officer Krawczyk:

Q. Why weren't you there at 9:00 o'clock?

A. Dope dealers are notoriously late.

Q. You didn't want to look too eager then?

A. Right. Only the police are on time and only the police wait.

Lopez claims the deputy prosecutor was attempting to bolster his involvement in the drug deal by referring to dope dealers and main men. However, Lopez fails to establish the impropriety of the comment. Officer Krawczyk was explaining why, if the drug deal was set for 9:00 a.m., he did not arrive on time. Had he shown on time, it would appear suspicious and suggest that he was law enforcement. The question was proper to explain the officer's conduct.

■ Lopez complains of a question put to Drug Enforcement Agency Special Agent Elaine Harris in reference to the buy price of $96.00:

Q. Would you say that it is a substantial drug deal?

A. Yes ma'am.

However, Lopez makes no allegation of error or impropriety, and merely refers to the question as "another example of a continuing course of conduct on the part of the prosecutor." Lopez presents no error for review.

■ Lopez challenges the prosecutor's introduction of evidence of other drug transactions. However, the transactions were not introduced to show Lopez's involvement in the drug deals. Rather, the testimony is related to the *res gestae* of the charged offense. For example, Lopez cites Officer Krawczyk's explanation that Kathy Tuft is a defendant from a previous drug case from whom he previously bought cocaine on three occasions and with whom he was negotiating for a purchase of two kilos of cocaine. This evidence was introduced to explain why Krawczyk started investigating Pedro Rodriguez which ultimately led to Lopez's arrest, and not to suggest Lopez's involvement with Tuft's dealing. Lopez next challenges Special Agent Ehrsam's statement concerning details of a second unrelated drug transaction which did not involve him. However, on the day of the cocaine deal, Ehrsam was assigned to watch the house of a suspected participant in order to give advance notice when the participants left for the deal, and possibly to observe the source of the drugs. While staking-out the house, Ehrsam observed a gray Cadillac pull up next to the house, deliver a white plastic bag, and then leave. Later the cocaine was delivered to Officer Krawczyk in a white plastic bag. Agent Ehrsam's testimony was therefore relevant to suggest the origin of the cocaine. Lopez challenges a third transaction detailed by Special Agent Harris, but he fails to support his allegation with citation to the record or authority. Harris detailed some of the transactions between Tuft and Krawczyk which were part of Krawczyk's ongoing investigations. Harris testified that the quality of cocaine from Tuft was very high which suggested she was near the source. Tuft's involvement explains Rodriguez's involvement as Tuft was Rodriguez's girlfriend, and therefore explains Krawczyk's investigation of Rodriguez. The relevance of Tuft's involvement to the *res gestae* is clear. The admission of Agent Harris' testimony was proper and any connection among Tuft, Rodriguez and

Lopez was legitimate and supported by the evidence. As evidence of these other drug transactions which did not involve Lopez was presented as part of the *res gestae* of the offense, the State's purpose was legitimate and does not constitute misconduct.

■ Lopez claims the prosecutor committed misconduct when she established through Officer Krawczyk that the .buy money used by the police was the taxpayer's money. He claims the purpose of this evidence was solely to prejudice him. As the jury could only conclude the money was the government's money, Lopez presents no reversible error here.

■ Finally, Lopez complains about the State's re-direct examination of Officer Krawczyk, after a cross-examination which concentrated on the lack of any identifiable fingerprints appearing on the State's exhibits. Lopez claims the prosecutor implied he was not cloaked with the presumption of innocence when she asked Krawczyk whether the fact that there were no identifiable fingerprints found negates Lopez's guilt. However, the State's goal was to emphasize that the failure to find identifiable fingerprints did not mean Lopez did not touch the items. While the choice of the phrase "negate the guilt" was unfortunate, it is unlikely the jury interpreted the question as placing a burden of proof on Lopez. No reversible error is presented on this issue.

### IV

■ Lopez claims prosecutorial misconduct, alleging he was placed in a position of grave peril when the State failed to disclose an alleged agreement to reduce Rodriguez's sentence if he testified favorably against Lopez. Lopez asserts that the affidavits attached to his motion to correct error must be accepted as true since they were unopposed by the State, citing *Harris v. State* (1981), Ind., 427 N.E.2d 658, 662. However, *Harris* does not require an opposing affidavit from the State. The contradiction of an affidavit can be provided by the record itself. *See Cole v. State* (1985), Ind., 475 N.E.2d 306, 307; *Smith v. State* (1983), Ind.App., 451 N.E.2d 57, 60–61. At trial Rodriguez denied any agreement with the State with respect to reducing his sentence. Thus, the defense affidavits were contradicted at trial. Also, the State produced an opposing affidavit by the Deputy .Prosecutor wherein she denied making any promise of favorable treatment. Although the affidavit was apparently filed with the court after its decision, it was executed the day before, as evidenced by the notarization. Also a hearing was held on Lopez's motion to correct error where presumptively, the State opposed Lopez's allegations. Therefore, Lopez's affidavits attached to his motion to correct error need not be presumptively accepted as true.

The record shows Rodriguez entered a guilty plea and was sentenced to twenty (20) years. Conversations were had between the deputy prosecutor, Rodriguez and his attorney. Lopez asserts that Rodriguez believed after talking with his lawyer that he was going to receive "consideration" for his testimony against Lopez. Rodriguez's attorney also apparently expected something in return from the State in exchange for Rodriguez's testimony. Subsequent to Rodriguez's plea, Rodriguez testified against Lopez. Rodriguez denied making any deals with the State regarding the testimony, but in apparent conflict with this testimony, Rodriguez also stated in response a question concerning how long he would be in prison, "[t]wenty years, for right now." The prosecutor told the jury in her closing argument that Rodriguez got twenty years of non-suspendable time with no hope of getting out. Lopez complains that within several months, the prosecutor set in motion the procedure by which Rodriguez's non-suspendable twenty year sentence was cut in half and he was to be sent to a minimum security institution. Lopez asserts this sentence reduction is related to a pre-testimony deal. Rodriguez's plea agreement does not contain an agreement concerning his testimony against Lopez. The Prosecutor's Affidavit states that no promises were made to Rodriguez.

■ The State is under an affirmative duty to disclose all agreements made

with potential witnesses which may influence the witnesses' testimony. *Bland v. State* (1984), Ind., 468 N.E.2d 1032, 1034. This duty arises when a confirmed promise exists. *Bubb v. State* (1982), Ind.App., 434 N.E.2d 120, 122. Preliminary discussions are not matters which are subject to mandatory disclosure. *Id. See also Sims v. State* (1983), Ind., 456 N.E.2d 386, 390. Disclosure is required only when dealing with express agreements. An express agreement does not exist if a witness testifies favorably in the hope of leniency, and the State neither confirms nor denies that hope to the witness. *See Aubrey v. State* (1985), Ind., 478 N.E.2d 70, 74. Here, Lopez's contradicted affidavits and Rodriguez's subsequent sentence reduction presented the court with a factual decision. Lopez asks this court to reweigh the evidence and rejudge the credibilities, a task repeatedly eschewed by this court. The trial court was in the better position to decide whether an agreement existed between the State and Rodriguez. The trial court found that an agreement had not been proven. Consequently, there was nothing to disclose. A new trial is not warranted.

## V

Lopez claims he was denied effective assistance of counsel due to numerous deficiencies of his trial counsel. He alleges his defense lawyer failed to interview or call potentially favorable witnesses and failed to object to inflammatory and prejudicial questions and comments by the prosecutor.

Judicial scrutiny of an attorney's performance is highly deferential. The standard for counsel's performance is that of reasonably effective assistance. To prevail on his claim, Lopez must show that his attorney's performance was deficient and that the defense was prejudiced by the deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Jones v. State* (1986), Ind., 495 N.E.2d 532, 534.

Lopez claims he asked his trial counsel to call Manuel Mendez, Debbie Lutz, and L.C. Butler, but that his attorney refused. The decision to refrain from calling a witness is a matter of trial strategy. *Marsillett v. State* (1986), Ind., 495 N.E.2d 699, 706. Absent a clear showing of prejudice, this court will not declare counsel ineffective for failure to call a witness. *Id.; Cobb v. State* (1987), Ind., 505 N.E.2d 51, 54. There is no showing that counsel's failure to present these witnesses was not a tactical decision. Lopez also fails to show he was prejudiced. An appellant must prove he was prejudiced by demonstrating that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Geary v. State* (1986), Ind., 497 N.E.2d 228, 229. With respect to Mendez and Lutz, Lopez merely states their testimony would have contradicted Rodriguez's testimony, and Lopez concludes from this that the verdict would have been different. However, Lopez ignores the fact that the conviction is sustainable independent of Rodriguez's testimony. As the statement of the facts shows, when Lopez drove up with Mendez to the drug deal, Rodriguez referred to Lopez as the "main man". Lopez was carrying a handgun at the time which was ready to fire, a sawed-off shotgun was found under Lopez's seat, and Lopez had two shells on his person which fit the shotgun. Rodriguez's remaining testimony merely buttressed the State's case. Regarding L.C. Butler, the husband of the juror who allegedly engaged in misconduct, there is no showing in the record as to what his testimony would have been, therefore there is only conjecture sustaining any prejudice resulting from counsel's failure to call him.

Lopez claims he was denied effective assistance of counsel by trial counsel's failure to object to inflammatory and prejudicial questions and comments by the prosecutor during the evidentiary and argument phases of trial. Lopez enumerates several examples which he relied on in Issue III and which he claims show a lack of diligence in the pre-trial preparation and during trial. Each of the cited actions by the deputy prosecutor went unchallenged

by the defense, which Lopez now argues constitutes ineffective assistance. However, when an ineffective assistance claim is predicated on counsel's failure to interpose an objection, the appellant must demonstrate that a proper objection would have been sustained by the trial court. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 396. As shown in Issue III, an attempt to show that a proper objection would have been sustained by the trial court would have failed. Thus, this claim does not show ineffective assistance of counsel.

 Finally, Lopez complains counsel failed to call as a witness the juror who was the subject of alleged misconduct. Counsel did not talk to or subpoena the juror to appear at the hearing on his motion, and he told the court he did not feel it would be ethical for him to talk to the jurors. Lopez asserts trial counsel misconceived his role in this matter and failed to vigorously defend him. However, Lopez fails to provide a demonstration of what the juror's probable testimony would have been and fails to establish that had the juror testified as expected, a new trial would have been necessary. Lopez fails to allege or show prejudice, and thus has not met the standard of ineffective assistance of counsel.

## VI

 Lopez challenges the denial of a request to question a juror who had been accused of misconduct, asserting the trial court abused its discretion and deprived him of a fair trial. Generally, proof that a juror was biased against the defendant or lied on *voir dire* entitles the defendant to a new trial. *McDaniel v. State* (1978), 268 Ind. 380, 375 N.E.2d 228, 232; *Berkman v. State* (1984), Ind.App., 459 N.E.2d 44, 45, *trans. denied.* A defendant seeking a hearing on juror misconduct must first present some specific, substantial evidence showing a juror was possibly biased. *Berkman,* 459 N.E.2d at 46. In order to warrant a new trial, there must be a showing that the misconduct was gross, and that it probably harmed the defendant. *Reed v. State* (1985), Ind., 479 N.E.2d 1248,

1251; *Gann v. State* (1975), 263 Ind. 297, 300, 330 N.E.2d 88, 91. The issue of juror misconduct is a matter within the trial court's discretion. *Bixler,* 471 N.E.2d at 1098.

 After Lopez's conviction, Lopez filed a request for the court to hold an inquiry into alleged juror misconduct. At the hearing Lopez's sole witness was Martha Butler, step-daughter of the juror in question. Martha Butler testified that the juror, Mrs. Hughes, knew Lopez prior to trial, that she discussed the case with other jurors prior to deliberation, that she read newspaper articles about the case during the trial, and that prior to deliberations her husband told her he thought Lopez was guilty. Martha Butler also testified her stepmother had told her that she and the other jurors had not made up their minds immediately before final deliberations. After Martha Butler testified, the prosecutor and Lopez asked the court to call Mrs. Hughes. The court denied the request for an inquiry holding that Lopez had failed to present a *prima facie* case of misconduct by failing to show prejudice. The trial court relied on a statement by Mrs. Butler that shortly before deliberations began Mrs. Hughes, along with two other jurors, did not know how they were going to vote. The trial court's denial of Lopez's request to produce Mrs. Hughes for an inquiry into her alleged misconduct was not an abuse of discretion. Since there was no showing of an impact on the verdict, further inquiry was unnecessary.

## VII

 Lopez argues the trial court erred by modifying his tendered final instruction No. 1. The instruction as tendered reads:

The fact that the Defendant was present in a vehicle at the Indiana Toll Road Plaza when a crime was occurring is not sufficient in itself to convict the Defendant of any crime. The State must prove beyond a reasonable doubt that the Defendant knew a crime was being committed and participated in the crimes charged. The State must prove the De-

fendant's knowledge and participation beyond a reasonable doubt.

The trial court gave the instruction in modified form as follows:

> The fact that the Defendant was present in a vehicle at the Indiana Toll Road Plaza when a crime was occurring is not sufficient in itself to convict the Defendant of any crime.

In reviewing an issue concerning the refusal of a tendered instruction, this court considers whether the instruction is a correct statement of the law, whether there is evidence to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which were given. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 517; *Richey v. State* (1981), Ind., 426 N.E.2d 389, 395. In addition, where an instruction which has the tendency to mislead or confuse the jury, the trial court may refuse the instruction or accept that part which it deems appropriate. *Jones v. State* (1983), Ind., 445 N.E.2d 92, 93. The language deleted from Lopez's tendered instruction could have misled the jury as it was not relevant to the shotgun charge. Thus, the instruction was properly modified.

## VIII

Lopez challenges the court's giving of the State's tendered final instruction No. 3, which reads:

> The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of a crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided in the commission of a crime.

Defense counsel objected to this instruction, stating it "does not address the fact or the issue of whether the Defendant knowingly participated or to the extent of which his participation affected the crime." Lopez now argues the instruction was misleading, confusing, and improperly emphasized particular evidence. Lopez claims that since the instruction emphasizes only two of the possible factors to be considered in accomplice cases, the jury could only have been misled into putting undue emphasis on those factors. However, an instruction which is a correct statement of the law will not be found to be erroneous merely because it was not a fuller statement of the law. *Laird v. State* (1985), Ind., 483 N.E.2d 68, 71. Each instruction does not have to state all of the law as all instructions are to be considered together. The State's burden of proof was given in other instructions.

## IX

Lopez argues that the trial court erred by permitting D.E.A. Special Agent John Mann to give his opinion that Lopez's actions and behavior at the drug deal were consistent with someone who was protecting his drugs. Lopez asserts the court should not have allowed Mann's opinion testimony since the question went to the ultimate issue. However, a witness may give an opinion on an ultimate fact in issue. *Hill v. State* (1984), Ind., 470 N.E.2d 1332, 1337; *Summers v. State* (1986), Ind.App., 495 N.E.2d 799, 802, *trans. denied.* The decision to allow the opinion on an ultimate fact by a witness is left to the sound discretion of the trial court, and is reviewable only for an abuse of that discretion. *Hill,* 470 N.E.2d at 1337; *Augustine v. State* (1984), Ind., 461 N.E.2d 101, 107; *Blackmon v. State* (1983), Ind., 455 N.E.2d 586, 591. Lopez fails to demonstrate how the trial court abused its discretion here. Lopez contends the jurors were as well qualified to form an opinion from the facts as Special Agent Mann about Lopez's state of mind. If this were the case, opinion testimony should not have been permitted. *Hill,* 470 N.E.2d at 1337. However, this was not the case. The State had to prove Lopez aided and abetted the cocaine deal. It is unlikely the jury was conversant in the hallmarks of the drug culture. What might appear harmless to a typical juror may indicate something significant to the trained eye. Therefore, there was no error in allowing the witness to give his opinion so that the jury would be better informed about the interpretation of certain facts.

## X

■ Lopez claims the trial court erroneously allowed Pedro Rodriguez to testify about statements made by Manuel Mendez, who did not appear at trial. Lopez acknowledges the co-conspirator exception to the hearsay rule, which allows statements of a co-conspirator where there is some evidence of a conspiracy and the statement was made in the furtherance of that conspiracy. *Wallace v. State* (1981), Ind., 426 N.E.2d 34, 41. The existence of the conspiracy may be shown by direct or circumstantial evidence, and the evidence need not be strong. *Id.* Lopez argues there was an insufficient showing of a conspiracy at the time the statements were introduced. However, the evidence up to Rodriguez's testimony shows a common criminal enterprise. Officer Krawczyk's testimony established the connection between Rodriguez and Mendez, revealed the comment by Rodriguez describing Lopez as "the main man", and disclosed that a sawed-off shotgun was found under Lopez's car seat. Agent Veal's testimony followed Krawczyk's and revealed more about the shotgun and the semi-automatic pistol found under Lopez's leg, and also revealed that two shotgun shells were found in Lopez's pocket. Agent Ehrsam's testimony followed with more corroborative evidence about the guns and shells. Thus, the inference from this evidence is that Lopez was involved in the cocaine deal, probably as the main man, and that Lopez's co-participants were Rodriguez and Mendez. The criminal enterprise was sufficiently established to allow the admission of Mendez's statements against Lopez under the co-participant exception.

## XI

■ Lopez alleges that improper, prejudicial and irrelevant material contained in the presentence report denied him due process of law. However, Lopez fails to detail any of the alleged inaccuracies. He merely cites to the record of the sentencing hearing and asserts that the recommendation of the probation department and investigating officer were improper. Lopez has failed in his burden of showing error. Further, as the sentencing court stated it would not consider any investigations of charges that show no disposition in the report and would otherwise impose sentence independent of any undue influence from the report, Lopez fails to show how he was harmed.

## XII

■ Lopez claims the trial court abused its discretion in sentencing him. On the charge of aiding in the delivery of cocaine, a class A felony, Lopez was sentenced to the thirty (30) year determinate sentence to which the court added ten (10) years for the following aggravating circumstances: 1) he possessed a handgun during commission of the offense, 2) the quantity of cocaine far exceeded 3.0 grams, and 3) the purity of the cocaine involved. Lopez was further sentenced to a four (4) year term for the charge of possession of a sawed-off shotgun, a class D felony, the sentences to run concurrently. The court found aggravating circumstances for this charge in that Lopez possessed a handgun. A reviewing court will not revise a sentence authorized by a statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed. Ind.R.App. Rev.Sen. 2.

Lopez claims the court's assertion that Mendez repudiated his exoneration of Lopez is unsupported and thus the trial court was relying on inaccurate information in sentencing him. However, Lopez fails to explain how the alleged error concerning Mendez's repudiation could have affected the sentence imposed.

Lopez asserts, without argument, that the court failed to consider his alleged mitigating circumstances. He does not enumerate any mitigating circumstances. Moreover, a court is not required to consider mitigating circumstances. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 496; *Frappier v. State* (1983), Ind., 448 N.E.2d 1188, 1189.

Lopez asserts the disparity between his sentence and the sentences of Mendez and

Rodriguez was not supported by the evidence and was manifestly unreasonable. He claims his higher sentence was a consequence of his asserting his right to a jury trial. However, the evidence at trial tended to show that Lopez was the "main man" involved in the deal and therefore was the most culpable. Further, no authority requires co-participants to receive proportional sentences.

Finally, Lopez challenges the assertion that he was a heavy drug dealer and its probable impact on his sentencing. However, Lopez fails to show that the court considered him a heavy drug dealer, or if it did, how that affected his sentence and rendered it unreasonable.

Lopez fails to establish or explain why he believes the sentence was manifestly unreasonable. We do not find that the sentences imposed by the trial court were manifestly unreasonable considering the nature of the crime and the character of the perpetrator.

## XIII

Lopez argues that the court erred when it denied his motion to declare I.C. 35–48–4–1 and I.C. 35–50–2–2 unconstitutional. He claims his sentence is disproportionate to the offense and therefore constitutes cruel and unusual punishment. These challenges have already been substantially addressed and rejected as "addressed to the wrong branch of government." *See Marts v. State* (1982), Ind., 432 N.E.2d 18, 22; *Hall v. State* (1980), 273 Ind. 425, 427–35, 403 N.E.2d 1382, 1384–89; *Huff v. State* (1983), Ind.App., 443 N.E.2d 1234, 1238. Therefore there is no error in the denial of Lopez's motion.

The trial court is affirmed.

GIVAN, J., concurs.

SHEPARD, C.J., concurs except as to Issue XIII, on which he concurs in result.

DeBRULER and DICKSON, JJ., concur in result only.