**Joseph Lee TAYLOR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 76A03–9110–CR–330.**

Court of Appeals of Indiana, Third District.

Nov. 19, 1992.

Transfer Denied Jan. 14, 1993.

---

Danny L. Williams, Angola, Hugh N. Taylor, Auburn, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

Joseph Lee Taylor was tried by jury and convicted of Murder, a felony. We affirm.

## FACTS AND PROCEDURAL HISTORY:

Joseph Lee Taylor ("Taylor"), Jared Crager ("Crager"), and Christy Osbun ("Christy") were high school friends. Christy had dated Taylor four times and Crager once but did not consider either one of them to be her boyfriend. Taylor, however, must have viewed Crager as a rival for Christy's affections. These feelings apparently intensified and, sometime before the night of October 16, 1990, Taylor asked one friend how many years he could get for murder and wondered to another if there was a way to "get rid" of Crager. On October 15, 1990, Taylor told a friend that he was mad enough at Crager that he could kill him.

On October 16, 1990, Taylor spent the day with Crager and both of them went over to Christy's house around 4:00 p.m. Crager waited in the car while Taylor went inside to talk to Christy. Taylor repeatedly asked Christy to go steady with him, but she declined. Christy then took Taylor outside so that his increasingly loud tone would not awaken her father who was sleeping. Taylor threatened to kill himself if she continued to refuse and also mentioned to Christy that he had the opportunity to kill Crager earlier, but did not. When Christy again told Taylor to keep his voice down because of her father, Taylor offered to kill her father. Christy's mother, upon hearing the threat, awakened the father who came outside and ordered Taylor off of his property.

Later that night Taylor and Crager got into a fight over Christy. Taylor took a revolver belonging to the Crager family and shot Crager six times, reloaded, and shot him two more times. Taylor then left the scene in Crager's car, wrecking it soon thereafter.

In the emergency room at the hospital soon after the accident, Taylor admitted to his mother that he had killed Crager "because of a girlfriend." Taylor also confessed to a fellow jail inmate.

On May 13, 1991, a jury trial commenced and on May 21, 1991, the jury found Taylor guilty of murder.

Taylor appeals his conviction and we affirm.

ISSUES:

Taylor presents three issues for appeal which we restate as follows:

I. Whether the trial judge committed fundamental error when he made an allegedly disparaging comment to defense counsel in the presence of the jury regarding a piece of evidence.

II. Whether the trial judge committed fundamental error when he personally questioned one of the witnesses at trial.

III. Whether the trial court erred in giving a particular jury instruction regarding flight.

DISCUSSION:

Issue I:

Taylor first contends that the trial judge committed fundamental error when he made an allegedly disparaging comment to defense counsel in the presence of the jury regarding a piece of evidence. We disagree.

We agree that the trial court has a duty to remain impartial and refrain from making unnecessary comments or remarks. *Cornett v. State* (1983), Ind., 450 N.E.2d 498, 505. The trial judge should be an impartial person whose conduct and remarks do not give the jury an impression of partiality. *Parker v. State* (1991), Ind. App., 567 N.E.2d 105, 112, *trans. denied.* Not all untoward remarks by a judge, however, constitute reversible error. *Id.* The remarks must harm the complaining party or interfere with the right to a fair trial. *Id.* In addition, the trial judge has a responsibility to preside over the trial and control the proceedings by taking responsible steps to insure proper order and discipline. *Cardwell v. State* (1987), Ind.App., 516 N.E.2d 1083, 1085, *trans. denied.* Implicit in the judge's duty to control the proceedings is the power to give reasonable admonitions to the witnesses and counsel. *Id.*

Taylor alleges that the trial judge failed to maintain an impartial and neutral position during the course of the proceedings and that this prejudiced Taylor's right to a fair trial. Taylor points to the following colloquy as evidence of judicial misconduct:

"Q And were you able to make any other observations concerning that particular weapon?

A Well, it's in two pieces. It appears to be broken and not able to function.

MR. WILLIAMS: Objection as to the available of it being able to function. There's no foundation to show whether or not there was any testing or anything of that nature on that weapon or whether or not it was functional.

COURT: These are things about which it does not require a rocket scientist to give an opinion of. A lay person may give an opinion on matters of that nature. I'll overrule the objection." (R. 746–47).

From this exchange, we fail to see how the trial judge abandoned his position of impartiality and neutrality. The trial judge's comment, that it did not take a "rocket scientist" to give an answer in the matter, was not a response that was partial to the State, but was merely his way of explaining that any lay person was qualified to speak to the question and that an expert was not needed. Even if the comment was partial to the State, however, there is no prejudice here that manifests fundamental unfairness and warrants a reversal of conviction. *See Cornett, supra* at 505–06. The trial court did not commit fundamental error in this instance.

Issue II:

Next, Taylor contends that the trial judge committed fundamental error when he questioned Dr. Cyran, a psychiatrist, about certain assumptions that underlay his opinion of Taylor's mental condition. We disagree.

As a general rule, a trial judge may, within reasonable limits, interrogate a witness. *Kennedy v. State* (1972), 258 Ind. 211, 280 N.E.2d 611, 620. This should, however, not be done in a manner which would improperly influence the jury. *Id.* The purpose of the judge's discretionary power to examine witnesses is to be an aid

to the jury in its fact-finding duties and this must be done in an impartial manner so that the judge does not improperly influence the jury with his own contentions. *Id.* Care should be exercised to avoid indirect expression of opinion by the trial judge, and it is improper for the trial judge to ask questions which are reasonably calculated to impeach or discredit the witness or his testimony. *Id.; see also Abernathy v. State* (1988), Ind., 524 N.E.2d 12, 13. As our supreme court has stated:

"The trial judge may not assume an adversarial role in the proceedings but may intervene in the fact-finding process and question witnesses in order to promote clarity or dispel obscurity. The purpose of the judge's discretionary power to question witnesses is to allow the court to develop the truth or present facts which may have been overlooked by the parties. The judge has not abused this discretion when the intervention is conducted in an impartial manner and the defendant is not prejudiced." *Fox v. State* (1986), Ind., 497 N.E.2d 221, 227.

 Taylor contends that the trial judge in this case improperly questioned and impeached the testimony of Dr. Cyran. The full exchange complained of reads as follows:

"Q Now as I understand, in reaching your opinion concerning a possible level of intoxication as being a mental disease or defect, in reaching that opinion, you have discounted or assumed that those facts you just related were not true. Is that correct?

A Yes, I assumed that those things that I just read were not true.

Q If those facts were true, how does that change your opinion, if it does?

A If those facts were true, then I would say that he did not suffer from a mental disease or defect at that time and that he made a rational decision in my opinion then to defend himself using a weapon.

Q Well, why is it that that changes your opinion?

A Because if he did that, that appears to be clearly what most people would do under the circumstances and appears to show that he could carry out what most people would consider, well, what people might consider I'd say to be a reasonable reaction under the circumstances. Someone was attacking him with a weapon and he took the weapon as the person continued to approach him then allegedly defended himself.

Q Does that affect your opinion as to the possible level of defendant's intoxication, or the level of defendant's possible intoxication?

A If that's true, it does.

Q And how does that affect that?

A Because I don't believe ... if that's true, I don't believe someone who is severely intoxicated ... let me get back to the statute. (Witness looks through his file) I don't believe that someone with a severely abnormal mental condition that was grossly and demonstrably impaired in their perception could then carry out that type of activity. I'm picturing someone who is much more severely impaired than that.

Q And so I can be sure to understand, your opinion is that the level of intoxication is significant in that a lower level of intoxication may not be a mental disease or defect but that a greater level of intoxication may meet the definition of the statute, is that correct?

A Correct. I believe that a high enough level could meet that definition." (R. 1320–22).

This questioning took place in the context of other testimony by Dr. Cyran concerning the level of alcohol and other intoxicants that may have been in Taylor's blood system at the time of the shooting.

After carefully reviewing the record surrounding this exchange, we cannot say that the trial judge improperly impeached Dr. Cyran. The questions asked by the trial judge appear designed to develop the arguments and clarify the testimony concerning intoxication and its effect upon Taylor at the time of the shooting. In addition, asking Dr. Cyran to clarify his assumptions, and their effect on his opinion of Taylor's mental state, was not adversarial in nature. Instead it clarified his testimony and gave

the jury a better grasp on the material previously presented. There was no prejudicial error in this matter.

Issue III:

Finally, Taylor contends that the trial court erred in giving a particular jury instruction regarding flight. We disagree.

■ The giving of jury instructions is entrusted to the sound discretion of the trial court. We will review its decision only for an abuse of discretion. *Weller v. Mack Trucks, Inc.* (1991), Ind.App., 570 N.E.2d 1341, 1343. *Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272, 1274. We consider only the evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. If any evidence supports the instruction, we will uphold the trial court's giving of the instruction. *Weller, supra* at 1343.

■ In addition, an instruction given to the jury must be supported by some evidence and be a correct statement of the law. *Wielgus, supra* at 1274; *Priestley v. State* (1983), Ind.App., 451 N.E.2d 88, 90. It is not necessary, however, for any single instruction to contain all of the law applicable to the case. *Wielgus, supra* at 1274. An instruction which is a correct statement of the law will not be found to be erroneous merely because it was not a fuller statement of the law. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1131. On review the instructions will be considered together and construed in harmony with each other. *Lopez, supra* at 1131; *Wielgus, supra* at 1274.

■ The flight instruction given in this case is an Indiana Pattern Jury Instruction and reads as follows:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, if proved, is not evidence of guilt. It is, however, evidence of consciousness of guilt."

The Indiana Pattern Instructions have been created to provide a guide to judges and

counsel. *Bane v. State* (1992), Ind., 587 N.E.2d 97, 101 n. 1. They have not been endorsed by our supreme court as correct instructions in every circumstance, but can be relied upon as a general guide. *Id.*[1]

In this case, Taylor challenges this instruction on two grounds: (1) that the trial court's instruction did not go far enough to explain the law, and (2) that the trial court's instruction was not supported by the evidence. We will address Taylor's complaints in order.

■ First, Taylor does not contend that the instruction given incorrectly states the law. Instead, he merely asserts that the instruction does not go far enough to explain the law and leaves the impression that flight can only be interpreted one way, as an inference of guilt and not of innocence. As we noted earlier, however, an instruction which is a correct statement of the law will not be found to be erroneous merely because it was not a fuller statement of the law. *Lopez, supra* at 1131.

Our supreme court has stated that a jury instruction, which allows a jury to consider the defendant's flight as a circumstance showing consciousness of guilt, is a correct statement of the law. *Powers v. State* (1982), Ind., 431 N.E.2d 799, 800. In *Powers*, the trial court gave the following instruction:

"The flight of a person after the commission of the crime with which he is charged, if there was such a flight, is a circumstance which may be considered by you as showing consciousness of guilt ..." *Id.*

The court held that this instruction was correct despite the defendant's objection that it overemphasized the amount of weight to be given the circumstance of flight. *Id.*

In addition, in *Dalton v. State* (1981), Ind.App., 418 N.E.2d 544, 546, *trans. denied*, the trial court gave the following instruction:

*Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 119.

---

1. While finding no error in a similar instruction, our supreme court nevertheless recently stated that it did not recommend its future use.

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, if proved, is not evidence of guilt. It is, however, evidence of the consciousness of guilt."

The defendant objected to this instruction alleging that it presumed a crime had been committed and was, therefore, conclusory in nature. *Id.* The court, however, upheld the instruction stating that it was not conclusory and did not suggest what weight or value the jury should give to the evidence. *Id.*

We find the cases cited above compelling. While the trial court in this case would not have erred if it had mentioned that flight can be consistent with innocence, it was not error to omit this extra information. The instruction as given was a correct statement of the law and there was, therefore, no error in giving it.

Second, we find that there was sufficient evidence to support this instruction. As noted earlier, an instruction is proper if there is some evidence of probative value to support it. *Priestley, supra* at 90. In order to determine whether an instruction on flight is applicable, all reasonable inferences which might be drawn from the evidence must be considered. *Smith v. State* (1984), Ind., 470 N.E.2d 1316, 1319.

For example, in *Agnew v. State* (1988), Ind., 518 N.E.2d 477, 478, the jury had before it facts that demonstrated that the defendant had taken the victim's automobile and escaped from her residence soon after the incident. He was found some twenty-four hours later in Michigan City, approximately twenty-five miles from the scene of the crime. Under these circumstances the court held that it was proper for the trial judge to give an instruction regarding flight. *Id.*

The facts in this case are remarkably similar. The jury in this case had before it facts that show Taylor left the scene of the crime in the victim's car soon after the shooting. Shortly thereafter he wrecked the car only a short distance away. In addition, at the scene of the wreck, Taylor told one of the EMT's (emergency medical technicians) that "I had to get the hell out of there. They were trying to kill me." (R. 866). He also asked another witness to help him with the car, but not to call anyone because he was drunk. These facts demonstrate sufficient evidence from which the jury could have drawn an inference of flight. There was no error in the giving of this instruction.

CONCLUSION:

For the foregoing reasons, the judgment of the trial court is affirmed.

STATON and BAKER, JJ., concur.