**James C. DICKENSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 12A02–9907–PC–489.

Court of Appeals of Indiana.

July 21, 2000.

Richard D. Martin, Miller & Martin Law Office, Michael E. Douglas, Douglas & Currie Law Office, Frankfort, Indiana, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Following a jury trial, Appellant–Defendant James C. Dickenson ("Dickenson") was convicted of Attempted Murder,[1] a class A felony. This appeal arises following the denial of Dickenson's petition for post-conviction relief. We reverse and remand.

### Issue

Dickenson raises several issues for our review, one of which is dispositive. We restate that issue as: whether Dickenson is entitled to a new trial based on juror misconduct.

### Facts and Procedural History

Dickenson was charged with the attempted murder of Jessie Stinnett. During voir dire, potential juror Tammy Stidham Lane ("Lane") was asked whether she had a relationship with the defendant or potential witnesses in the case that would affect her ability to be an impartial juror. Lane did not acknowledge that she had such a relationship with Dickenson, who had been her neighbor during childhood. Lane stated that she knew a few of the potential witnesses, but that her ability to weigh the testimony of those witnesses would not be affected. Lane did not respond when the judge asked if any potential jurors had prior knowledge about the facts of the case. Lane was chosen as a juror.

During the examination of the jurors following the jury's verdict of guilty, a family member of Dickenson's, who had not been present during the evidentiary portion of the trial, recognized Lane. After further investigation, Dickenson filed a motion for an evidentiary hearing to determine juror misconduct and new trial, alleging that Lane had lied about her relationship to witness Karen Stinnett ("Karen"), who was the victim's wife, and her pre-trial knowledge of the case. Along with his motion, Dickenson filed affidavits of persons who had seen Lane and Karen together, or who had overheard Lane and Karen discussing the incident prior to trial. At an evidentiary hearing to determine juror misconduct, the trial court questioned Lane about her answers on voir dire, and determined that Lane did not lie and was not biased or prejudiced against Dickenson. As a result, the trial court denied Dickenson's motion for a new trial. The court refused Dickenson's request to present witnesses who would testify to Lane's relationship with Karen and her pre-trial knowledge of the case; however, Dickenson made an offer to prove, which consisted of testimony from four witnesses. The proffered testimony of those witnesses was subject to cross-examination by the prosecution.

Dickenson filed a praecipe and a record was prepared for direct appeal. However, this Court dismissed the appeal without prejudice so that Dickenson could pursue post-conviction relief. (P–C R. 19.) Dickenson's petition for post-conviction relief alleged several errors, but did not include Dickenson's claim that the trial court erred by not finding juror misconduct and denying his motion for a new trial. (P–C R. 20–27.) Dickenson's petition for post-conviction relief was denied. (P–C R. 59.) This appeal ensued.

### Discussion and Decision

Dickenson contends that the trial court erred by not granting him a new trial on the basis of juror misconduct. Specifically, Dickenson argues that Lane lied in re-

---

**1.** See Ind.Code § 35–42–1–1; Ind.Code § 35–41–5–1.

sponse to questions on *voir dire*, and during the hearing to determine juror misconduct. As a result, Dickenson argues that he was denied the opportunity to challenge the juror, and a new trial is warranted.

Initially, we note that Dickenson did not raise the issue of juror misconduct in his petition for post-conviction relief. Ordinarily, this would result in waiver of the issue. *See* Ind. Post–Conviction Rule 1(8). However, the right to an impartial jury is guaranteed by Article I, § 13 of the Indiana Constitution, and is an essential element of due process. *Lahrman v. State*, 465 N.E.2d 1162, 1169 (Ind.Ct.App. 1984). Further, if it is established that a juror lied on *voir dire*, the defendant is entitled to a new trial. *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988). Therefore, any error committed by the trial court in making a determination that there was no juror misconduct would substantially affect the due process rights of the defendant, and is therefore, fundamental. *See Taylor v. State*, 717 N.E.2d 90, 93 (Ind.1999) (holding that fundamental error doctrine applies only to violations of basic and elementary principles of due process, when harm or potential for harm cannot be denied). As a result, we will address the issue on appeal.

### Standard of Review – Post–Conviction Relief

Our standard of review for cases where post-conviction relief has been denied by the post-conviction trial court is well settled. A post-conviction petition under Ind. Post–Conviction Rule 1 is a quasi-civil remedy, and as such, the petitioner bears the burden to prove by a preponderance of the evidence that he or she is entitled to relief. *McCurry v. State*, 718 N.E.2d 1201, 1204 (Ind.Ct.App.1999). Upon review of a denial of post-conviction relief, the appellate court will not set aside the post-conviction court's ruling unless the evidence is without conflict and leads solely to a result different from that reached by the post-conviction .court. *Id.*

In making this determination, we consider only the evidence that supports the decision of the post-conviction court, together with any reasonable inferences to be drawn therefrom. *Id.*

### Standard of Review – Juror Misconduct

It is misconduct for a juror to make false statements in response to questions on *voir dire* examination, and such is held to constitute reversible error because it impairs the right to challenge the juror, either peremptorily or for cause. *Fuquay v. State*, 583 N.E.2d 154, 157 (Ind. Ct.App.1991). Generally, proof that a juror was biased against the defendant or lied on *voir dire* entitles the defendant to a new trial. *Lopez*, 527 N.E.2d at 1130. A defendant seeking a hearing on juror misconduct must first present some specific, substantial evidence showing a juror was possibly biased. *Id.* In order to warrant a new trial, there must be a showing that the misconduct was gross, and that it probably harmed the defendant. *Id.* The issue of juror misconduct is a matter within the trial court's discretion. *Id.*

### Analysis

Following the jury's verdict, Dickenson filed a Motion for Evidentiary Hearing for Juror Misconduct and New Trial. In his motion, Dickenson alleged that juror Lane lied on *voir dire*. Specifically, Dickenson alleged that Lane gave dishonest responses to inquiries regarding: (1) whether she had a special relationship with Dickenson that would make it difficult or impossible to be a fair and impartial juror; (2) whether she had any prior knowledge of the case; and (3) whether she knew any of the witnesses, including Karen, who were expected to testify at trial. At the evidentiary hearing to determine misconduct, the trial court again questioned Lane as to her relationship with Dickenson and Karen. Lane testified that she knew both of them, but she had no more than a casual relationship with either of them. Further, Lane denied that she discussed the case

prior to the trial, that she formed an opinion as to innocence or guilt prior to trial, that she had any prejudice against Dickenson, and that Karen was in Lane's circle of friends.

However, the information elicited through affidavits and from witnesses during Dickenson's offer to prove revealed information to the contrary. Affidavits were submitted by David ("David") and William ("William") Dickenson, Dickenson's brothers, and Wendy Richards ("Richards"). David and William both swore that they had seen Lane and Karen together at a bar following the incident but prior to trial. Richards swore that she saw Lane and Karen together at the bar almost every weekend, and that she had overheard Lane, Karen, and others discussing the incident shortly after it happened. William and Richards were also present at the evidentiary hearing, and proffered the same testimony during the offer to prove. Additionally, Randall Ferguson proffered that he saw Lane and Karen at another bar, sitting and drinking together in a booth. Finally, Annette Vallera proffered that she frequently saw Lane and Karen together at a bar where she worked.

■ From this evidence, we conclude that Lane misrepresented her relationship with Karen when asked about it on *voir dire* and at the post-verdict evidentiary hearing. Further, the evidence reveals that Lane was not truthful when she failed to affirmatively respond to the court's inquiry on *voir dire* as to whether any of the potential witnesses had prior knowledge of the case. This evidence leads us to the conclusion that there was juror misconduct in this case, in the form of a juror giving untruthful answers during *voir dire*. Moreover, because the evidence reveals that juror Lane had knowledge of the case prior to trial, and was friendly with the victim's wife, who testified at trial, we hold that the misconduct was gross and probably harmed the defendant. Accordingly,

we reverse Dickenson's conviction and remand for a new trial.

Reversed and remanded.

SULLIVAN, J., concurs.

VAIDIK, J., dissents with separate opinion

VAIDIK, Judge, dissenting

I disagree with the majority when it concludes that Dickenson's conviction should be reversed. Instead, I would remand this case for an evidentiary hearing to determine whether juror Lane was biased.

Generally, when the defendant presents evidence that a juror was possibly biased, and concealed this bias on voir dire, the trial court must hold an evidentiary hearing to determine whether the juror was in fact biased. *Berkman v. State*, 459 N.E.2d 44, 46 (Ind.Ct.App.1984), *trans. denied.* However, in order to receive such a hearing, a defendant must first present some specific, substantial evidence showing a juror was possibly biased. *Id.* It is within the trial court's discretion to determine whether a strong enough indication of bias exists as to entitle the defendant to a hearing on the matter. *Id.* Proof that a juror was biased against the defendant or lied on voir dire entitles the defendant to a new trial. *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988). In order to warrant a new trial, there must be a showing that the misconduct was gross, and that it probably harmed the defendant. *Id.*

Here, after the trial, Dickenson presented affidavits to the court alleging that juror Lane was a friend of the victim's wife, Karen. The affidavits further claimed that Lane and Karen were seen frequently together and were overheard to have discussed the case before trial. I find that the evidence presented by the defendant was strong enough to indicate possible bias on the part of the juror. Thus, the trial court should have conducted an evidentiary hearing on this matter to

determine whether the juror was in fact biased. Instead, the trial court heard only the testimony of Lane and determined that Lane was not biased and that the defense had not "made even a prima facie case with regard to that." Record at 654. Thereafter, the defense made an offer of proof by presenting the oral statements of several witnesses.

Based on this offer of proof and the defense affidavits, the majority concludes that Lane was biased, was untruthful during voir dire, and that her misconduct was gross and probably harmed the defendant. In order to reach these conclusions, the majority had to believe the witness statements and affidavits over Lane's testimony. Put differently, the majority reweighed the evidence and judged the credibility of the witnesses. The majority was wrong to do so. These are functions of a trial court and not an appellate court.

Consequently, I would remand this case to the trial court for an evidentiary hearing.[2] At the hearing, the trial court should hear evidence from both sides before deciding whether juror Lane was in fact biased.

2. In the event this case were remanded, the trial court should consider recusing itself since it has already determined that the juror was not biased.